Baylor B. Barker et al. *v.* B. Harper Shepard, Administrator, Use, etc.

<hr>

BAYLOR B. BARKER *et al. v.* B. HARPER SHEPARD, Administrator, Use, etc.

1. APPEARANCE: RECITAL IN THE RECORD.—A statement in the record, "that defendant appeared and withdrew his plea," unaccompanied by a plea, and not sustained by any other part of the record, does not constitute an appearance for such defendant, and will not warrant a judgment against him where the return of the summons is not made in accordance with the requirements of the statute. Jeffords, J., dissenting.

ERROR to the Circuit Court of Monroe county. Hon. J. Milton Acker, judge.

On the 23d of April, 1860, defendant in error instituted his action against Hubbard Saunders, B. B. Barker, and B. M. Bradford. The summons was returned as to Saunders, " not found ; " as to Barker, " executed in person, and handed him a copy ;" as to Bradford, " executed by leaving a copy at his residence." At the November Term, 1860, the following entry appears :

" B. H. SHEPARD, Administrator, Use, etc. *v.* B. B. BARKER *et al.*

" Came the plaintiff, and defendants, B. B. Barker and B. M. Bradford, by attorneys, and plaintiff dismissed this suit as to the defendant, Hubbard Saunders, as to whom the writ has not been executed ; thereupon the other defendants withdraw their plea, and say nothing further in bar or preclusion of plaintiff's action. It is therefore considered by the court, etc." Immediately preceding this entry the following appears : " No plea on file or in the final record."

The suit is brought to this court by writ of error, and the errors assigned are : That the return of the process as to Bradford is defective, and the recital in the record does not constitute an appearance, and thereby cure the defect.

*Houston & Reynolds*, for plaintiffs in error, contended :

1. The return of the sheriff as to defendant Bradford is insufficient : " Executed by leaving a copy at his place of residence." *Foster* v. *Simmons*, 40 Miss. Rep. ; *Merritt* v. *White*, 37 Miss.

2. A judgment is an entire thing, and if reversible on account of a defective service or return of process as to one co-defendant, it is reversible as to all. *Smith* v. *Rollins*, 25 Mo. Rep. 408 ; *Rush* v. *Rush*, 19 ib. 441 ; 1 How. Miss. 333, 527 ; 2 ib. 786 ; 14 Johns. 424 ; 12 ib. 434 ; 5 Wend. 161 ; 29 Miss. Rep. 138–9.

3. The recital in the judgment " that defendants withdrew their plea, and said nothing further in bar of the action," is not conclusive, when it is affirmatively shown by the record that no plea was filed. *Pounds* v. *Gartman*, 29 Miss. Rep. 138–9 ;

Baylor B. Barker et al. *v.* B. Harper Shepard, Administrator, Use, etc.

*Miller* v. *Ewing*, 8 S. & M. 421; *Pittman* v. *Planters' Bank*, 1 How. Miss. 530.

4. The recital, in the judgment that defendants appeared, is the act of the clerk, does not constitute an appearance for such defendants, and will not warrant a judgment against them. *Miller* v. *Ewing*, 8 S. & M. 421.

*W. & J. R. Yerger* for defendant in error.

There is no error in these records. The alleged error in service of process as to Bradford is cured by his appearance. The record of the judgment is in these words: " Came the plaintiff by attorneys, and defendants, Baylor B. Barker and Benjamin M. Bradford, also by attorneys, and plaintiff dismissed this suit as to the defendant, Hubbard Saunders, as to whom the writ has not been executed. Thereupon the other defendants. withdraw their plea, and say nothing further in bar or preclusion of plaintiff's action, etc."

An appearance covers all defects in service of process, whether made in person or by attorney. *Gwin* v. *Williams*, 27 Miss. Rep. 324.

The recital in the judgment of the appearance by defendants and withdrawal of their plea is conclusive, and is an estoppel of record, and this court will not go behind the entry of the judgment. It does not appear affirmatively, as suggested by counsel for plaintiffs in error, that no plea was filed for defendants. On the contrary, it appears affirmatively in the judgment of the court itself, that plaintiffs in error, being defendants below, entered their appearance by attorney, and withdrew their plea, etc.

The case of *Gwin* v. *Williams*, 27 Miss. Rep. 324, is directly in point. The court says in that case: " It is manifest that the appearance of the defendant is not to be shown only by his plea, for he may appear and decline to plead, in which case the judgment is not one of default, but on appearance, and *nil dicit*. When the record shows that the defendant appeared to the action, the entry is not merely an unofficial act of the clerk, but a necessary and proper part of the record as made by the court, and

must be taken as true. . . . We are aware of no statute in this case requiring pleas to be drawn up in writing. It is generally required, as a matter of convenience, by the Circuit Courts, etc. . . . In this case it appears by the record that the defendant appeared, etc." The record in this case and the case above are not distinguishable on principle.

Peyton, J., delivered the opinion of the court.

The defendant in error instituted suit in the Circuit Court of Monroe county against the plaintiffs in error and one Hubbard Saunders.

Upon the writ of summons the sheriff made the following return : " Came to hand, and executed on B. M. Bradford, by leaving a copy of this writ at his residence ; also on B. B. Barker in person, and handed him a copy of this writ, May the 9th, 1860. Defendant Saunders is not to be found in my county, May the 9th, 1860."

At the November Term of said Circuit Court the clerk made the following entry of judgment in this case : " Came the plaintiff by attorneys, and defendants, Baylor B. Barker and Benjamin M. Bradford, also by attorneys, and plaintiff dismissed this suit as to the defendant, Hubbard Saunders, as to whom the writ has not been executed ; thereupon the other defendants withdraw their plea, and say nothing further in bar or preclusion of the plaintiff's action. It is therefore considered by the court that the plaintiff recover of the defendants, Benjamin M. Bradford and Baylor B. Barker, the sum of sixteen hundred and thirty-five dollars, the debt in the declaration mentioned ; also the further sum of eighty-seven dollars and seventy-five cents, the damages sustained by reason of the detention of said debt, together with the costs in this behalf expended."

The plaintiffs prosecute this writ of error to reverse said judgment, and assign for error that the return of process as to Bradford is not sufficient to warrant a judgment against him.

There is no plea in the record for the plaintiffs in error, and the return of the service of process on B. M. Bradford is not in compliance with the requirements of the statute, and is

clearly insufficient to authorize a judgment by default against him.

The only question for the consideration of this court is, whether the recital by the clerk before the entry of judgment, that the plaintiffs in error appeared by their attorneys and withdrew their plea, in the absence of any plea in the record, will constitute an appearance for the plaintiffs in error.

It is insisted by the counsel for the defendant in error that the recital in the record is sufficient evidence of the appearance of Bradford to uphold the judgment, and the case of *Gwin* v. *Williams* is cited in support of that position.

We do not think that case sustains the position assumed by them. That was an action of ejectment, in which the record states that "Alexander Gwin, on his motion, was admitted to defend in the room of Richard Roe, and thereupon by his attorney comes and defends the wrong and injury, when, etc., and pleads the general issue, confessing lease, entry, and ouster, etc." This standing alone in the record would not have been sufficient evidence of Gwin's appearance to the action, but taken in connection with other parts of the record, which show that the defendant appeared and conducted the defence throughout by his attorney, offering instructions and making a motion for a new trial, it was sufficient evidence of his appearance. The record in that case shows that both parties were in court, and proceeded to the trial of the cause on an informal and defective plea, without any objection thereto by either party. *Gwin* v. *Williams*, 27 Miss. 324, 333.

The record of this case contains no plea whatever of any character. It contains the mere recital of an implied fact, which is contradicted by the record. If the plaintiffs in error appeared as the recital states, it must have been by plea, and that should appear in the record, notwithstanding the recital states that they withdrew their plea. A plea, when filed among the papers in a cause, cannot itself be withdrawn from the file, except by leave of the court, and that should appear in the record. The phrase, withdraw a plea, means in legal contemplation to withdraw or waive the defence set up in the plea, and

not to abstract the plea itself from the file ; that remains on file, and constitutes a part of the record in the case.

Although it may be conceded that there was no statute of this State prior to 1857 which required pleas to be in writing, yet, by a long and well-settled practice, the pleadings in a cause in any superior court of this State, proceeding according to the course of the common law, have always been required to be drawn up in writing, independently of any statutory regulation upon the subject. ·

Even under the ancient practice in England, when pleadings were delivered orally by the parties or their attorneys in open court, in the presence of the judges, they were contemporaneously reduced to writing by an officer of the court, and together with a short notice of the nature of the action, the time of the appearance of the parties in court, and the acts of the court itself during the progress of the pleading, constitute the record of the case. Stephen on Pleading, 25. And by the modern practice in that country, which dispenses with the actual presence in open court, the appearance of the defendant is effected by making a certain formal entry in the proper office of the court, expressing his appearance; or, in case of arrest, it may be considered as effected by giving bail to the action. On the part of the plaintiff no formality expressive of appearance is observed, but upon the appearance of the defendant both parties are considered as in court. As the pleadings have long since ceased to be delivered orally in open court, they are drawn up in writing in the first instance. Stephen on Pleading, 26. It thus appears that from an early period in the English jurisprudence to the present time, the pleadings have been reduced to writing, and constitute an essential part of the record.

The statute provides that all pleadings shall be signed by the party or his attorney. Revised Code, 496, art. 115.

This court has repeatedly decided that a mere recital in the record by the clerk, in the absence of a plea for defendants, " that the defendants appeared by attorney," will not constitute an appearance for those not legally served with process, and will not warrant a judgment against them. *Pittman* v. *Plant-*

*ers' Bank*, 1 How. 527; *Dean* v. *McKinstry*, 2 S. & M. 213; *Edwards* v. *Toomer*, 14 S. & M. 75; *Miller* v. *Ewing*, 8 S. & M. 421; *Schirling* v. *Scites*, MS.

In the case of *Steele* v. *Palmer*, MS., this court decided that a recital in the record, that " the defendant demurred. to the evidence," without any demurrer appearing in the record, is insufficient to support a judgment overruling such demurrer.

In the case of *Moores* v. *Parker*, 3 Littell, 263, in which there were two defendants, and only one of them served with process, and judgment was rendered against both of them without any appearance or plea, the court says: " It is true the record recites that the parties came by their attorneys. But such a recitation on the record, we think, ought not to be construed into an appearance of the defendant not served with process."

And again, in the case of *Hall* v. *Williams & Fiske*, in which process had not been served on Fiske, it was held by the court that a recital by the clerk before the entry of the judgment, stating that " Williams & Fiske came by their said attorney," could not be taken to be an assertion of record that " Fiske appeared to the action," in the absence of a plea for him. 6 Pick.

The mere statement in the record of this case by the clerk, unaccompanied by a plea, and not sustained by any other part of the record, is deemed wholly insufficient to authorize a judgment against Bradford.

This view of the case accords with the previous adjudications of this court upon the subject, and we think it safer to adhere to them.

To give absolute verity to mere recitals in the record by the clerk, often made inadvertently, *currente calamo*, and without due consideration of the facts of the case, would be productive of much mischief and injustice.

Let the judgment be reversed, and the cause remanded.

JEFFORDS, J., delivered the following dissenting opinion:

I regret that I cannot concur in the majority opinion of the court just read.

There certainly can be no question but that, as to Bradford, the *service* was *defective;* and standing upon that *alone,* no valid judgment could have been rendered against him.

The other proposition contained in the first assignment — that is, that the judgment is an *entirety,* and if irregular as to one defendant, is so as to all — is most unquestionably true as a general rule.

The difference between myself and the other members of the court is not as to the *sufficiency* of the *service,* nor as to the *validity* of a judgment founded upon such defective service, but as to the *legal effect of the recitals contained in the record itself.*

By reference to the record, we are informed that on the 22d day of November, 1860, " came the plaintiff by attorneys, and defendants, Baylor B. Barker and Benjamin M. Bradford, also by attorneys, and plaintiff dismissed this suit as to the defendant, Hubbard Saunders, as to whom the writ has not been executed; thereupon the other defendants withdraw their plea, and say nothing further in bar or preclusion of the plaintiff's right of action."

It is upon these recitals that I insist the jurisdiction of the Circuit Court should be maintained, and its judgment stand.

I am frank to confess that I have experienced no inconsiderable feeling of embarrassment in the examination of this question, arising from the fact that, as I understand them, the rulings of this court on the matter under consideration do not appear to me to have been at all times entirely in accord with each other.

It seems quite clear that the court itself has not been altogether insensible to this same feeling, as must be manifest after reading the opinion of the court in the case of *Jones et al.* v. *Hunter et al.,* 4 How. p. 342, where the court evidently regards itself as being called upon to reconcile that opinion with *Pittman & Gwin* v. *The Planters' Bank,* 1 How. p. 527.

Again, in the case of *Miller et al.* v. *Ewing et al.,* 8 S. & M. p. 421, all of the preceding cases are once more passed in review before the court.

The case of *Pittman & Gwin* v. *The Planters' Bank* is the first in order of time, and bears some resemblance to this case, but still there are many distinguishing features between the two cases.

In that case there was no return of service whatever as to Gwin; in this, there was a very fair attempt and a partial return of service as to Bradford. By the recitals of the record in that case, it appears that "this day came the parties by their attorneys, and the defendants withdraw the plea by them pleaded, and say they cannot gainsay the plaintiff's action," without *naming the defendants separately*.

In the case at bar, each of the defendants against whom judgment was rendered are *separately* named. This circumstance tends to show that the recital was not a mere clerical mistake. In the former case, the record shows that a plea was filed by Pittman, who was served, and none found in the record on behalf of Gwin, who was not served. The court says, "the plea is by Pittman alone, and there is an entry on the record 'that the defendants withdraw the plea by them pleaded;' yet we cannot take this as an appearance by Gwin. There is nothing, therefore, to show that he is in court, and, if not, a judgment against him was irregular. The mere memorandum of the clerk being in the plural number, is not sufficient to constitute an appearance."

It seems to me that the holding of the court in this case was the first departure from correct principle, by allowing the recitals of the record to be impeached; and this has led to all of the real or apparent conflict on this subject, to be met with in the decisions of this court.

The opinion in this case is very brief, with but a single reference to authority, and little or no attempt at a discussion of the principles upon which it is predicated.

The next case in point of time is that of *Jones et al.* v. *Hunter et al.*, 4 How. p. 342, in which there were eight defendants sued, six of whom were served, and *no return as to two*. The judgment was general — against the "defendants," without naming them, and this was assigned for error.

Baylor B. Barker et al. *v.* B. Harper Shepard, Administrator, Use, etc.

The plea was: " and the said defendants, by their attorneys, come and defend, etc. ;" and this is the only appearance, except the entry of the judgment by the clerk, which recites that on another day " came the parties by their attorneys, etc." It was said by the court in this case, " that it is the duty of the attorney who appears for only a part of the defendants to plead in the name of those for whom he appears. If he undertakes to plead for the whole, the parties who did not, as well as those who did employ him, will be estopped by such appearance."

I do not find ✓fault with this decision, for I believe it states the rule of law correctly, although there are many authorities showing the plea should have been confined to the defendants who had been served with process. As to the defendants who were served, there can be no doubt whatever but that they were bound by the appearance and plea of the attorney, whether he was authorized to appear for them, or not. *This is pushing the* doctrine of estoppel to the extreme verge of the authorities, and much farther than is really necessary to go, in my opinion in order to uphold the judgment in the present case. If this case can be harmonized upon reason and principle with the case of *Pittman & Gwin* v. *The Planters' Bank,* I must confess I am incapable of forming a correct analysis of the two cases.

The only difference between the two cases is, that the same recital is twice made — once in the plea, and once by the clerk; they are precisely the same each time. Will not *one* recital of the fact carry as much force with it as any number of recitals of the *same fact ?* Can any person satisfactorily explain, upon principles of sound reason, why the recitals of a record made by the clerk of the court, under the direction of the court, in open court, should be less sacred than the same recitals made in a plea by an attorney out of court.

Many reasons suggest themselves to my mind why, if any distinction should be drawn, the recitals made by the clerk should be held to be of greater sanctity than those of an attorney. Under our practice, we do not call upon an attorney to exhibit his authority, and he may or may not be employed ; and whether he is or not, his appearance binds the defendant.

Baylor B. Barker et al. *v.* B. Harper Shepard, Administrator, Use, etc.

The result is, the opportunity afforded for corruption and fraud from an abuse of power, by designing attorneys, is incomparably greater than that of a clerk.

The clerk must be deemed to be constantly under the eye and subject to the guidance of the court. He is simply, nothing more nor less, than the hand of the court — holding the pen with which it writes its findings and doings, and in contemplation of law inserts in its records and proceedings nothing which is not authorized by law or sanctioned by the court.

If the court will but perform its duty, by taking the necessary pains to inform itself on so important a matter as that of jurisdiction, it may easily do so. This may and should be done in every instance where material recitals occur; and if this be done, it will be found to be morally impossible for the clerk ever to practise an imposition on the court. The law presumes the court *always* to have performed its duty, and this is the reason why it is so exceedingly difficult to evade or escape the force of that which is stated or assumed to have been done, although it may never have occurred in point of fact.

According to the view which I take of this subject, the question whether the recitals contained in the record are *true* or *false, can never arise;* but that in the cases just mentioned (whether by a clerk or an attorney), as well as all others, in all matters *material,* and *necessarily pertaining* to the *record,* the recitals, *when* made, should be regarded as *absolutely conclusive.*

The case of *Henderson* v. *Hamer et al.,* 5 How. 525, affirms the case of *Jones et al.* v. *Hunter et al.* The next case in the order of time is that of *Dean* v. *McKinstry et al.,* 2 S. & M. p. 213, and affirms the rule laid down in *Pittman & Gwin* v. *The Planters' Bank.* Then follows the case of *Miller et al.* v. *Ewing et al.,* 8 S. & M. p. 421. This case seems to have been presented and argued with unusual learning and ability.

The opinion of the court was delivered by *Chief Justice Sharkey* and is characterized by all that vigor of thought and display of legal acumen for which he is so justly renowned, not alone in this State, but throughout the entire continent.

The whole opinion is worthy of the reputation of its great author, and portions of it, for masterly statement and just and conclusive reasoning, will compare favorably with anything to be found within the whole range of juridical lore.

He says, "It is admitted that the jurisdiction of the court is the subject of inquiry, but how is the inquiry to be made? That is the question."

"It is a question of evidence, and comes down to this: Will parol evidence be received in a court of law to contradict the record, by proving a fact to be untrue which is affirmatively asserted to be true on the record? If so, then any fact may be disproved, — one as well as another. This would be making judgments but *primâ facie* evidence — good until disproved. If a party may open a judgment by denying that he appeared by attorney, he may also deny an appearance made in proper person. It would open the door as to an inquiry as to the employment of an attorney, or as to the appearance of the party, to be decided by a jury; and judgment, instead of being the end, would often be the beginning of litigation."

"A judgment, before it could be said to import verity on its face, would require the aid of a second judgment establishing the jurisdiction of the first."

This is admirably and most forcibly put by the learned Chief Justice.

There is not a word, syllable, or letter in this quotation but meets my most thorough concurrence. It is true, this was said with reference to the facts of the case then under consideration, but the principles laid down are *general,* and the scope of reasoning is broad enough to embrace every *material* and *necessary* recital contained in records.. They are most pointedly applicable to the case now under consideration; and establish most clearly the rule for which I am contending, which is, the *absolute inviolability and sanctity of all the necessary and proper parts of a record.*

The case of *Pounds et al. v. Gartman & Pendleton,* 29 Miss. 138, is also referred to by plaintiffs in error as sustaining their view. There is this very marked distinction between

that case and the one now under consideration: it is nowhere asserted that the defendants not served, had at any time made their appearance.

It is almost useless for me to remark, that it is not the issuance and service of process alone which brings or places a defendant before the court. The want of it may be, and often is, supplied and cured by an appearance in person or by attorney; and when such is the case, and the fact entered on the record, it cannot be disputed.

The *defendant* in error cites and relies on the case of *Gwin* v. *Williams*, 27 Miss. p. 324.

In this case there was no service, but the record recites that "Gwin is admitted to defend herein, etc., and by his attorney comes and defends, etc., pleads the general issue, etc." *But no plea was found in the record.* The court held that, *" as to the appearance, it may be shown either by an entry made on the record, under the sanction of the court, or by the plea of the defendant. It is manifest that the appearance of the defendant is not to be shown by his plea only,* for he may appear and decline to plead, in which case the judgment is not of default, but on *nil dicit.*

"*When the record shows that the defendant appeared to the action, the entry is not merely an unofficial act of the clerk, but a necessary and proper part of the record as made by the court, and must be taken as true.*"

This comes up fully to the position, and clearly covers the point which I have been endeavoring to maintain. But how does this holding comport with the declaration of the court in the case of *Pittman & Gwin* v. *The Planters' Bank*, where they say the entry of the appearance is "the mere memorandum of the clerk," and regard it as being of no binding force whatever. Here is a square and positive conflict. In *Monk* against *Horne*, p. 100, 38 Miss., the court held that where the decree recites that proof of notice and service has been made according to law, it will be presumed, in the absence of proof to the contrary, that service was legally and duly made. The exact reverse of this was held, as already observed, in the case of

*Pounds et al.* v. *Gartman & Pendleton.* The two cases are irreconcilable with each other.

We find in the record in this case the following unauthorized statement:

"No plea on file or in the final record in this case." This recital is opportune. It serves to illustrate the views which I have been advocating, and demonstrates most clearly the difference between the *necessary* and *unnecessary* recitals of a record, and such as are *conclusive* and such as *are not*.

This recital was manifestly made years after the judgment was rendered, was unauthorized by the court, and *forms*, when *made, no necessary* part of the record. It cannot now be received to contradict the express recital that the defendants appeared by their attorney, and "withdrew their plea," etc.; nor can this statement have any weight, or be of any assistance to the court in arriving at a conclusion whether or not a plea ever was actually on file. It will not do to allow the statement which any volunteer may interpolate in a record, years after the rendition of a judgment, to have the effect to falsify and contradict the express recitals of the record; nor can a statement that "no plea is *now* on file" be received as tantamount to a declaration that *no plea ever was on file.* Such a proposition is too illogical to admit of discussion.

It would be well for both judges and lawyers now and then to recur to first principles, and occasionally consult the ancient landmarks of our jurisprudence; and thus, by refreshing their memories of, and renewing their acquaintance with, the great masters of the science, with the laws as they exist in their pristine purity, in their original fountains; and by so doing they will be enabled the more readily to discover *truth*, the great *central* and *paramount object* of every judicial investigation. Acting upon this suggestion, I propose to refer to Lord Coke, a high and *fixed* luminary of our profession. He says, "Records import in themselves such uncontrollable credit and verity, as they admit of no averment, proof, or plea to the contrary." This paragraph contains the concentrated essence of all the wisdom and experience of ages. It is a volume in a single sen-

OCTOBER TERM, 1868.                    291

Baylor B. Barker et al. *v.* B. Harper Shepard, Administrator, Use, etc.

tence.   Every departure from it, and every relaxation of the
rule, but leads to mischief and confusion. This, it seems to me,
is demonstrated by our own decisions just referred to.

Litigation should have an end, and I believe this object can
be accomplished more certainly, and with far less danger to so-
ciety, by a rigid adherence to the ancient doctrine as to the sanc-
tity and unimpeachable character of records, as expounded by
Lord Coke, than by adopting that lax dogma which declares that
a recital forming a necessary part of the record is "a mere
memorandum of the clerk," and that, too, without the means of
determining whether it be *true* or *false*, as a matter of fact.

It seems to me a perfectly sure and infallible solution of
this question may be reached in this and every other similar
case, by asking whether the recitals are *such as may occur, and
if, when they do occur, they must be recited as forming an in-
dispensable part of the record.*   If the answer is in the affirm-
ative, it will follow as an *uncontrollable* and *irresistible legal
presumption, universally applicable* to the records and proceed-
ings of all courts of *general jurisdiction,* that whatever may or
should properly compose a part of the record, *when found in it,
must be held to be rightfully there, and to be of equal force, ef-
fect, and validity with any other necessary portion of the record.*

For the purpose of testing this matter, let us suppose, for the
sake of the argument, that on the 22d day of November, 1860,
as stated in the record in this case, "the plaintiff came by his
attorneys, and defendants, Baylor B. Barker and Benjamin M.
Bradford, also by attorneys, and withdrew their plea, etc.," did,
actually, and in very truth, come, and did in fact withdraw their
plea, precisely as stated; no one will for an instant deny but
that this would be an appearance, and the jurisdiction of the
court complete and unquestionable.   Nor could it be denied
that if such were the facts, but that it was the duty of the court
to direct and require the clerk to enter them of record ; and all
must admit that they would clearly be an indispensable part of
it.

How can this court, then, *aliunde,* assume to determine
against the verity of these recitals ?   This question resolves itself

into this shape. It is true, as stated, that the defendants did come into court, and they may have been bodily present in person; but the court says that one of the defendants was not properly served, and therefore we take it upon ourselves to contradict this record, and we say he was not in court at all.

It might be all right and proper enough for the court to hold thus, if a party could come or be brought into court by the service of process *alone.*

We have seen, however, time and again, that a party may voluntarily come into court in person, or may employ an attorney to come for him, and even that an attorney may come without his knowledge or consent; and that when a defendant does appear in proper person, or by attorney with or without his consent, he is bound by such action. But says the court farther: the record states that the defendants withdrew their plea, and we do not find any plea in the record; *ergo,* this recital must be untrue. They could not withdraw their plea when they never had one on file. Here, again, I think the court is at fault for entirely overlooking and ignoring the well-established presumptions applicable to the question of recitals.

It does seem to me that all of the conflict upon the subject under discussion arises from the failure of courts to keep constantly in view the true character and nature of records, and the presumptions of law favoring their validity.

By remembering that the most liberal presumptions are indulged in favor of the regularity and validity of the proceedings and records of courts of general jurisdiction; that courts can only inquire into such errors as are apparent on the face of the record itself; that they cannot go beyond it to look for errors; that error will never be presumed; and scrupulously adhering to the only safe rule, that whenever recitals are made which may be legitimate and proper, they must be held to be conclusive, and utterly unassailable, except for fraud or its equivalent — by remembering these rules, and applying these tests, courts need never err on this subject. By relaxing or neglecting them, they must inevitably fall into irreconcilable and inextricable confusion.